# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

TOMMY KASALO,                           )
                                   )
        Plaintiff,                    )
                                   )
     vs.                                )       Case No. 12 C 2900
                                   )
TRIDENT ASSET MANAGEMENT,LLC,           )
and OPS 10 LLC,                         )
                                   )
        Defendants.                   )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Tommy Kasalo has sued Trident Asset Management, LLC and OPS 10LLC, asserting claims under the Fair Debt Collection Practices Act (FDCPA) concerning a debt he alleges defendants attempted to collect from him in 2012. Kasalo has moved for summary judgment on some but not all of his claims. In response, defendants have filed a cross-motion for summary judgment on all of Kasalo's claims. For the following reasons, the Court grants Kasalo's motion in part, grants defendants' motion in part, and otherwise denies the motions.

## Background

At some point in the past—the parties dispute when—Kasalo opened and maintained an account with Columbia House, a company that sells DVDs and other items to consumers. In his complaint, Kasalo alleges that he obtained a copy of his credit report from a company called TransUnion on March 28, 2012 and discovered that it cited information, attributed to Trident, that he had a past due balance on his

Columbia House account. On March 30, Kasalo called Trident and spoke to an employee named Teresa Davis Mautz. The parties agree that Trident's policy at the time required its employees to follow a script during phone calls with consumers that provided information required to be disclosed per 15 U.S.C. § 1692g when a consumer disputes a debt. The parties disagree, however, on what Mautz said to Kasalo. The phone call was not recorded, and Kasalo has lost his notes about the call. The parties do agree, however, that the phone call was the "initial communication" between Trident and Kasalo for purposes of the FDCPA.

At some point before or after the phone call, Trident communicated information about Kasalo's account to various credit reporting agencies. The parties dispute whether Trident told the agencies that the date Kasalo's debt first went delinquent was February 6, 2009.

On April 9, 2012, Trident wrote a letter to Kasalo stating that OPS "has purchased" his account "and placed it with our office for collection." Pl.'s Ex. N at 1–2. The envelope in which the letter was sent was postmarked April 10, 2012. The letter listed OPS as "Current Creditor" and stated the balance due was $117.70. *Id.* at 1. The parties disagree about whether this statement was accurate and whether OPS owned the account at the time of the letter. It is undisputed, however, that OPS bought the account at some point in time. The letter stated that Kasalo could notify Trident within thirty days that he disputed the debt, in which case Trident would "obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification." *Id.* The letter also said that Kasalo could request the name and address of the original creditor, and it provided a number he could call "to discuss suitable payment

options." *Id.* The letter also included two addresses for Trident (one in Alabama, one in Georgia). The letter was not sent within five days of Kasalo's phone call to Trident because the employee responsible for mailing such letters was on vacation in the interim period.

Kasalo filed this lawsuit on April 18, 2012 and served Trident with summons and the complaint on April 20. Trident's vice president and registered agent, James Hubbard, accepted these materials at Trident's address in Georgia.

## Discussion

A party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A court "must determine whether the evidence, so construed, establishes genuine disputes of material fact with respect to" plaintiffs' claims. *Harper v. Fulton Cnty.*, 748 F.3d 761, 765 (7th Cir. 2014). A genuine dispute of material fact "exists only if there is enough evidence upon which a reasonable [finder of fact] could return a verdict in" the non-movant's favor. *Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013). On cross motions for summary judgment, the court assesses whether each movant has satisfied the requirements of Rule 56. *See Cont'l Cas. Co. v. Nw. Nat'l Ins. Co.*, 427 F.3d 1038, 1041 (7th Cir. 2005). "As with any summary judgment motion, we review cross-motions for summary judgment construing all facts, and drawing all reasonable inferences from those facts, in favor of the non-moving party." *Laskin v. Siegel*, 728 F.3d 731, 734 (7th Cir. 2013) (internal quotation marks omitted).

## A. OPS as "debt collector"

Kasalo argues that OPS is a "debt collector" for purposes of the FDCPA, which if

so would subject OPS to liability under the statute.  (Trident does not dispute it is a debt collector.)  As support, Kasalo says OPS's purchase of defaulted consumer debts "for the purpose of subsequently collecting the same through others, including Trident," makes OPS a debt collector.  Pl.'s Mem. at 10.  Defendants respond that OPS is not a debt collector under the FDCPA because it does not perform collections but instead hires others to do so and that it is not the principal purpose of its business to collect debts.  Because the FDCPA does not apply to OPS, defendants contend, OPS is entitled to summary judgment on all of Kasalo's claims.

Kasalo's claims fall under FDCPA provisions that concern the activities of "debt collector[s]."  *See, e.g.*, 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); *id.* § 1692f ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."); *id.* § 1692g(a) ("Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice . . . .").

The statute defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  It also defines "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed."  *Id.* § 1692a(4).  However, it excludes from the ranks of creditor "any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt

for another." *Id.* Because the FDCPA concerns the actions of debt collectors, those parties who are deemed "creditors" rather than "debt collectors" "are not covered by the Act." *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003). Considering the fact that the "debt collector" definition excludes those collecting debts that were "not in default at the time it was obtained by such person," an entity that "simply acquires the debt for collection . . . is acting more like a debt collector." *Id.* "In other words," the court said, "the Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not." *Id.*

Schlosser, however, which Kasalo cites, does not discuss the scenario of an entity that purchases a debt in default but then hires a third party to perform the actual collection of the debt. The defendant in *Schlosser* purchased the plaintiffs' mortgage when it was in default and then "sent a letter . . . identifying itself as a debt collector" that stated it was "a formal demand to pay the amounts due." *Id.* at 535. The same was true in another Seventh Circuit case Kasalo cites, where the purchaser of a defaulted debt was found to be a debt collector. *See McKinney v. Cadleway Props., Inc.*, 548 F.3d 496 (7th Cir. 2008). *McKinney* stated the rule this way: "[T]he purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself." *Id.* at 501. The defendant in the case was indeed "collecting for itself": it "issued a collection letter" telling the plaintiff it had purchased the debt "and that she should begin making payments." *Id.* at 499. The court noted that the defendant was "in the business of acquiring and collecting on defaulted debts originated by another." *Id.* at 502.

In *Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009), the Seventh Circuit addressed the situation of an entity that contended it was not a debt collector under the FDCPA because "it d[id] not collect debts; rather, it purchase[d] debts and then hire[d] others to collect them." The court noted that when "the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired." *Id.* Because the defendant in *Ruth* did not dispute that it acquired debts that were already in default, the court held that the defendant was a debt collector under the FDCPA. This conclusion was based on cases citing the statute's exclusion from the definition of debt collector an entity seeking a debt "not in default at the time it was obtained." *Id.* at 797 (quoting 15 U.S.C. § 1692a(6)(F)). The court then went on to address the defendant's argument that it "took no action" to collect the debts in the case because "did not draft, authorize, or send the collection letter at issue." *Id.* The court observed that the defendant admitted that "it drafted the notice and directed" another party "to include it in the mailing with the collection letter." *Id.* This drafting and direction "constituted affirmative conduct with regard to collecting a debt," because the notice was "sent in connection with an attempt to collect a debt." *Id.* at 797, 799. The court thus found that the defendant was indeed a debt collector.

The scenarios presented in *Schlosser* and *McKinney* are different from the situation here. OPS acquired an existing debt in default, as did the defendants in those cases, but then it hired another party (Trident) to collect the debt. And unlike the situation in *Ruth*, Kasalo alleges no action on the part of OPS other than hiring Trident; Kasalo does not allege that OPS drafted anything that was sent to Kasalo or took any

6

action toward him.  Neither party, in fact, offers a case with a factual scenario like this one, in which a party alleged to be a "debt collector" hired a third party to collect a debt it acquired post-default but did not take any actions itself toward the debtor.  Case law on this scenario is admittedly sparse, although some district courts have addressed it briefly.  *See, e.g.*, *Kloth v. Citibank (S.D.)*, 33 F. Supp. 2d 115, 119 (D. Conn. 1998) ("Citibank is not a 'debt collector' under the FDCPA merely because it retains a collection agency to collect its debts."); *see also Grier v. Simmons & Clark Jewelers*, Civ. Action No. 11-cv-14247, 2012 WL 1247171, at *5 (E.D. Mich. Feb. 17, 2012) (same); *Challenger v. Experian Info Solutions, Inc.*, Civ. No. 06-5263, 2007 WL 895774, at *2 (D.N.J. Mar. 22, 2007) (same).

OPS may be a debt collector in one literal sense of the term; it purchases debts that people owe, such as the one in this case, and it does so for the purpose of making money on the debts by hiring others to collect.  The FDCPA, however, has its own definition of the term.  As the Court has indicated, a debt collector under the FDCPA is one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  The definition also includes "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  *Id.*  The statute governs interactions between debt collectors and consumers and seeks "to eliminate abusive debt collection practices by debt collectors."  *Id.* § 1692(a).  An entity that acquires a consumer's debt hoping to collect it but that does not have any interaction with the consumer itself does not necessarily undertake activities that fall within this purview.

Kasalo has not shown there is a genuine dispute of fact about whether OPS "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id.* § 1692a(6). Although OPS purchased Kasalo's debt when it was in default, OPS has not undertaken any collection activity, as required to fit the definition of "collector" as discussed or presumed of the defendants in the cases Kasalo cites. OPS does not "attempt[ ] to collect," as Kasalo argues. Pl.'s Mem. at 10. It hires others to so do, as evidenced by the fact that all of Kasalo's interactions in this case were with Trident. OPS's name was on the letter Trident sent to Kasalo, but OPS did not send the letter or any other letters or notices, nor did it make any phone calls to Kasalo. The Court therefore concludes that no reasonable jury could find in favor of Kasalo on his FDCPA claims against OPS, which require a determination that OPS is a "debt collector" within the meaning of the statute.[1]

## B.    15 U.S.C. § 1692g(a) claim

Kasalo's complaint asserts two claims under 15 U.S.C. § 1692g(a): first, the defendants did not provide certain information in their initial communication with him, and second, they failed to mail him a written validation notice within five days of his initial phone call about his debt with a Trident representative. Both sides have moved for summary judgment on these claims. Kasalo contends that Trident's "initial

---

[1] In light of this conclusion, the Court need not address Kasalo's contention that OPS is vicariously liable for the actions of Trident. Kasalo's argument on this score is based on the notion that "[a]n entity which itself meets the definition of 'debt collector' may be held vicariously liable for unlawful collection activities carried out by another on its behalf." Pl.'s Mem. at 26 (quoting *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 404 (3d Cir. 2000)). Because OPS is not a debt collector, this argument is inapplicable.

communication" with him—the phone call that he made to the debt collector—was deficient, because oral notice of his validation rights does not comply with the FDCPA; even if oral notice is sufficient, Trident did not provide him with all the required information over the phone, such as an address where he could send notice of a dispute regarding the debt; and Trident's follow-up letter incorrectly listed OPS as the current creditor. Defendants argue that although their letter to Kasalo was mailed five days past the five-day maximum required in section 1692g, oral notice is sufficient to convey the statute's terms, and that the information Trident's representative provided Kasalo over the phone met the FDCPA's requirements.

### 1. Permissibility of oral notice

Kasalo makes two arguments for why oral notice of the elements required in section 1692g(a) is prohibited or at least inadequate. He contends first that the Seventh Circuit's decision in *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872 (7th Cir. 2000), "unequivocally" proscribes oral notice of section 1692g(a)'s elements. Pl.'s Mem. at 11. Second, he argues that there is too much information in section 1692g(a) to convey orally. Defendants dispute that *Miller* disallows oral section 1692g(a) disclosures, and they argue that the language of the FDCPA permits oral disclosures of the required information.

The FDCPA requires a debt collector to "send the consumer a written notice" that contains the amount of the debt owed and the creditor's name. 15 U.S.C. § 1692g(a). The notice must also include statements that the debt will be assumed valid if the consumer does not dispute it within thirty days; that if the consumer disputes the debt within thirty days, the debt collector will obtain verification of the debt or a judgment

against the consumer and mail it to the consumer; and that "upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor." *Id.* §§ 1692g(a)(3)–(5). The notice must be sent "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt," except in situations where the required information "is contained in the initial communication." *Id.*

Another section of the FDCPA addresses required communications between the debt collector and the consumer. It states that a debt collector may not fail to disclose in the initial communication to a consumer that it is trying to collect a debt and that any information it obtains will be used for that purpose. *See id.* § 1692e(11). The subsection proscribes such a failure "in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial communication." *Id.*

Given these statutory provisions, it is fairly clear that a debt collector may convey the required 1692g(a) information to the consumer in the initial communication and that the FDCPA contemplates that the initial communication may be oral. The Seventh Circuit has observed that the FDCPA "does not specify the manner in which the required disclosures must be provided," though a debt collector may not use "flat-out contradiction, overshadowing the information with other text or formatting, or failure to explain an *apparent* though not actual contradiction." *McKinney*, 548 F.3d at 502 (internal quotation marks omitted). In general, the disclosures must not appear "in a form or within a context in which they are unlikely to be understood by the unsophisticated debtors" the statute seeks to protect." *Id.* at 502–03. It would appear,

then, that a phone call that does not employ these tactics and relays the required section 1692g(a) information does not run afoul of the FDCPA.

Kasalo contends that *Miller* says otherwise.  In *Miller*, the Seventh Circuit held that the defendant's notice to the plaintiff consumer did not comply with section 1692g(a) because it stated only the unpaid principal balance in the initial phone communication, and provided an 800 number for the consumer to call and discover the full amount owed.  *Miller*, 214 F.3d at 875.  The court held that the requirement to provide the amount owed was "not satisfied by listing a phone number," especially because "trying to get through to an 800 number is often a vexing and protracted undertaking."  *Id.*  The court added that "anyway, unless the call is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to."  *Id.*

It seems fairly clear that the Seventh Circuit's statement in *Miller* about "authoriz[ing] debt collectors to comply orally" was dicta.  The case did not directly concern telephonic compliance with section 1692g, and the court was equally concerned with the difficulty in contacting a company via an 800 number as with potential problems with oral compliance.  Perhaps more importantly, the case did not anticipate the situation in this case.  Here, the initial communication was initiated *by the debtor*, not the other way around; the debt collector simply responded to him over the phone when he called to dispute the debt.  If the FDCPA requires the initial communication to include written disclosures, what was Trident to do?  Should its representative have simply hung up the phone on Kasalo immediately upon learning he

was calling about a debt, so as to avoid giving prohibited oral notification of the required initial disclosures?  Or should it have refused to talk to him over the phone at all and asked for a mailing address?  In the Court's view, Kasalo is hard-pressed to complain about Trident's initial disclosures being verbal when it was he who initiated the communication.

In sum, considering the factual scenario this case presents and the fact that the FDCPA, by its language, permits orally relaying section 1692g's elements in the initial communication with the consumer, the Court concludes that no reasonable fact finder could determine that Trident's telephonic communication with Kasalo violated section 1692g.

Aside from the permissibility of oral conveyance of section 1692g's requirements, Kasalo argues that the information that debt collectors must provide to consumers under that section "is simply too voluminous" to be relayed orally.  Pl.'s Mem. at 15. Kasalo contends that an unsophisticated consumer cannot be expected to have a writing instrument handy when receiving this information, and he adds that "[a]n unsophisticated consumer cannot have such a sophisticated memory" so as to take in all of the required disclosures.  *Id.*  Therefore, Kasalo says, oral conveyance of the 1692g information impermissibly frustrates the purpose of the statute.

The case Kasalo cites for this argument, however, does not discuss the problem of overly voluminous information.  It instead states the rule, also discussed above, that the information cannot be conveyed in a confusing manner.  *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000) ("[A] violation of the FDCPA occurs when a dunning letter is confusing to the unsophisticated reader."

(internal quotation marks omitted)). In *Marshall-Mosby*, the plaintiff argued that the letter she received contained both the required section 1692g disclosures plus additional language that "contradict[ed] and overshadow[ed] the disclosures required by the FDCPA." *Id.* at 325 (internal quotation marks omitted). Kasalo does not argue that Trident provided more information than section 1692g requires; instead, he contends Trident did not provide all of the information required. This is the opposite of what was at issue in *Marshall-Mosby*. Kasalo cites no case for the proposition that it would be confusing for a consumer to hear each element of the required information in section 1692g(a) over the phone, a list that has five elements. He is arguing instead that an unsophisticated consumer cannot understand the information required to be delivered under section 1692g if it is spoken rather than written down, a proposition that he has not supported. The Court finds this argument unpersuasive.

### 2. Sufficiency of provided oral notice

Having concluded that oral transmission of section 1692g's terms is permissible under the FDCPA, the Court still must determine whether there is a genuine factual dispute on whether Trident conveyed all of the required elements of the statute to Kasalo when he called to ask about his debt. Kasalo contends that Trident's representative did not provide some of the required disclosures under section 1692g. These include the name of the current creditor and the fact that he could obtain verification of his debt if he disputed it in writing within thirty days. He also contends that Trident did not provide him with an address to which he could mail a dispute or tell him that he could dispute the debt. Defendants respond that "[t]here is no question" that they provided the proper disclosures to Kasalo, citing the script their

representatives read to consumers and Trident system notes indicating the script was read to Kasalo. Defs.' Mem. at 2. They further contend that Kasalo's only proof is his own say" that he did not receive them. Defs.' Mem. at 1. They argue that a "plaintiff's testimony, without more, in [sic] not enough to create a fact question to defeat summary judgment." *Id.* (citing *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, 211 F.3d 1057 (7th Cir. 2000).

To begin with, some of the disclosures Kasalo says Trident failed to provide are not required by the plain language of section 1692g. As described above, that section lists five required disclosures debt collectors must make to consumers: the amount of the debt; the name of the creditor; a statement that the creditor will assume the debt valid unless the consumer disputes it within thirty days of the notice; another that the collector will obtain verification of the debt or a copy of a judgment against the consumer and mail it to the consumer if the consumer notifies the collector within thirty days of the notice; and another statement that the collector will provide the name and address of the original creditor if different from the current creditor if the consumer sends a written request within thirty days. *See* 15 U.S.C. §§ 1692g(a)(1)–(5). Kasalo contends that Trident was also required to provide "an address to which a dispute could be mailed," as well as inform him "that he could dispute part of the debt." Pl.'s Mem. at 16. These items are not included among the requirements of section 1692g, and Kasalo does not cite a case holding otherwise.[2] Trident's alleged failure to

---

[2] In his reply, Kasalo argues that the provision of an address by a debt collector is an implied requirement of section 1692g(a), and he stresses the importance of possessing such an address in order for a consumer to dispute his debt. This argument ignores the fact that Kasalo himself initiated the communication with his debt collector, during which he notified Trident that he disputed his debt. This belies Kasalo's contention that not

communicate these items to Kasalo are not properly part of a section 1692g(a) claim.

As for defendants' contention that a plaintiff's testimony cannot create an issue of material fact for purposes of summary judgment, they are plainly incorrect. The Seventh Circuit has repeatedly held the opposite, in cases much more recent than *Pettit* that defendants did not bother to bring to the Court's attention. *See, e.g.*, *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011) ("[E]vidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion. . . . Kellar's deposition testimony created a factual dispute, and the court was not free to resolve it in Summit's favor."); *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010) ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.'"). The Seventh Circuit has observed that such testimony cannot defeat summary judgment if it "is based on speculation, intuition, or rumor or is inherently implausible." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).[3] But so long as the self-serving affidavit or testimony is "based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts." *Berry*, 618 F.3d at 691.

Defendants have not argued, nor could they, that Kasalo's declaration regarding

getting an address during the initial communication frustrates the FDCPA by hindering a consumer's ability to dispute her debt, as does his argument elsewhere that he did dispute his debt in writing by serving Trident with a complaint. Furthermore, Kasalo did receive an address from Trident, albeit five days late, in Trident's mailing to him of April 10, 2012. *See* Pl.'s Ex. N at 1 (listing address and phone number for Trident at the top of the letter and another at the bottom).

[3] In addition, *Pettit* is distinguishable. In that case, the plaintiff's self-serving opinion that a company was a credit bureau was not sufficient to create an issue of material fact. *Pettit*, 211 F.3d at 1061–62. This is not the same thing as a plaintiff's affidavit or testimony, however self-serving, based on personal knowledge.

the content of his phone call with Trident was speculative, inherently implausible, or based on intuition or rumor. His declaration makes clear that he is basing his allegations against defendants on his personal knowledge; he is discussing a phone call that he, after all, initiated, and the call was not recorded. *See* Pl.'s Ex. F. Placed against defendants' evidence of the script their representatives read to consumers and their system notes regarding this particular call, Kasalo's declaration is sufficient to show a genuine factual dispute on a material point.

This conclusion cuts both ways, as both parties have moved for summary judgment on this claim. There is a genuine dispute on what was said in the phone call, one that cannot properly be resolved on summary judgment.[4]

## C.     15 U.S.C. § 1692g(b) claim

Defendants have moved for summary judgment on Kasalo's claim under 15 U.S.C. § 1692g(b), in which he contends that defendants failed to cease collecting his debt after he sent them a written dispute within thirty days of the initial communication. Defendants contend that Kasalo never sent any such written dispute. They argue that a complaint in a lawsuit—the notice of dispute that Kasalo cites—does not suffice as written notice; a consumer and not his lawyer must send the notice; and their "registered agent" was an insufficient recipient for FDCPA purposes. In his reply, Kasalo contends that *he* is entitled to summary judgment on his section 1692g(b) claim,

---

[4] Kasalo also contends in his initial memorandum that the letter Trident sent him was deficient under the FDCPA because it falsely stated that OPS was the current creditor on his debt. Kasalo alleges the same facts on another claim; although the Court has granted Kasalo summary judgment on that claim, given OPS's binding admission that it did not own the debt at the time of the letter, there remains a dispute of material fact on this claim on the question of what was said during the phone call Kasalo made to Trident.

because his complaint served as his written notice to Trident that he was disputing his debt, and because the "registered agent" on which he served his complaint was actually Trident's vice president, who received it at Trident's office.

Under 15 U.S.C. § 1692g(b), a debt collector must cease collection of a debt or any disputed portion thereof if the consumer notifies the collector in writing that she disputes the debt within thirty days of receiving the disclosures required under section 1692g(a). The debt collector is permitted to resume collection of the debt if it "obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer." 15 U.S.C. § 1692g(b). The parties dispute whether Kasalo properly notified Trident in writing that he disputed his debt, but it is undisputed that Trident continued its collection efforts against Kasalo during the relevant period.

Kasalo's initial complaint in this lawsuit was, of course, in writing. It contained a statement that Kasalo "does not owe any balance for the goods that he obtained from Columbia [House] as he paid the alleged debt in full long ago." Compl. ¶ 9 [docket no. 1]. It was therefore a notification in writing that Kasalo disputed the debt in question. Defendants do not present any cases or argument explaining why the complaint cannot constitute written notice for purposes of section 1692g(b), and the Court finds their argument in that regard unpersuasive.

Kasalo served the complaint on James Hubbard, who is Trident's vice president and accepted the complaint at Trident's business address. These last two facts—Hubbard's position at Trident and where he accepted the complaint—are conspicuously

missing from defendants' brief, which mentions only that Hubbard is Trident's "registered agent" while underlining those words in an apparent effort to emphasize their significance. Defs.' Mem. at 6–7. If Hubbard is not an acceptable recipient for Kasalo's written dispute of his debt, it would be difficult to find someone who is. Not only is Hubbard Trident's vice president, but he was Trident's designated Rule 30(b)(6) deponent in this case. The Court agrees with Kasalo that serving Hubbard with the complaint in this case constituted submitting to Trident written notice that he disputed the debt.

Finally, defendants contend that because Kasalo's attorney prepared and sent the complaint, it was not literally a written dispute from the "consumer." This argument elides the fact that Kasalo's complaint bears his name at the very top, refers to him as the plaintiff, and proceeds to outline his various allegations against defendants. It is irrelevant that the complaint was served by someone else; Kasalo is the one ultimately making his claims, not his lawyer (even if, as is the case, his lawyer is his brother). Taken to its logical conclusion, defendants' argument would require a consumer to personally submit her written dispute to a debt collector by hand, because permitting any other party to deliver the message, even the United States Postal Service, would not comply with the statute's literal terms. That, of course, would be absurd.

The Court concludes there is no genuine dispute of fact concerning whether Kasalo sent a written dispute of his debt to Trident. There is likewise no dispute regarding whether he sent this writing within the required thirty-day time frame, or whether Trident continued its debt collection efforts against Kasalo despite this notice. The Court therefore concludes that Kasalo is entitled to summary judgment as to liability

18

on his claim under 15 U.S.C. § 1692g(b).[5]

**D.     15 U.S.C. § 1692e claims**

Kasalo has asserted several claims under 15 U.S.C. § 1692e, and he has moved

for summary judgment on claims under sections 1692e(2)(A) and 1692e(8).  In

response, defendants have moved for summary judgment on those claims and also on

Kasalo's claims under sections 1692e and 1692e(10).  The Court will address each

claim in turn.

**1.     Section 1692e(2)(A) claim**

Kasalo's claim under section 1692e(2)(A) rests on the allegation that OPS

informed him via letter that it had purchased his debt yet did not own the debt at the

time of the letter.  This, Kasalo argues, amounted to a false representation.  Defendants

contend that Kasalo made no such claim in his complaint, and say that even if he did,

they are entitled to summary judgment because Kasalo is incorrect that OPS did not

own the account when it wrote the letter.

Under 15 U.S.C. § 1692e(2)(A), it is a violation of federal law for a debt collector

to falsely represent "the character, amount, or legal status of any debt."  The "plain

language" of this statute "prohibits . . . the use of any false, deceptive, or misleading

representation."  *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1021 (7th Cir. 2014).

_____

[5] Although Kasalo did not originally move for summary judgment on this claim, Federal
Rule of Civil Procedure 56(f)(1) permits the Court to "grant summary judgment for a
nonmovant" provided that there is "notice and a reasonable time to respond."  *See
Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely
acknowledged to possess the power to enter summary judgments *sua sponte*, so long
as the losing party was on notice that she had to come forward with all of her
evidence.").  Defendants got notice via Kasalo's reply that he was seeking summary
judgment, and they had the opportunity to respond in their own reply.  Indeed, they took
that opportunity.  Rule 56 therefore permits the Court to grant summary judgment to
Kasalo on this claim, and defendants do not argue otherwise.

Furthermore, under section 1692e, "[a] statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 756 (7th Cir. 2009); *see also O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011) ("[T]o be actionable a misleading statement must have the ability to influence a *consumer's* decision.").

Trident's letter to Kasalo, dated April 9, 2012 and apparently sent the next day, states that "OPS 10, LLC has purchased the above referenced account." Pl.'s Ex. N at 1. It also lists OPS's name next to the words "Current Creditor." *Id.* At some point during this litigation, Kasalo sent several requests for admission to OPS. One of them asked OPS to admit or deny this statement: "Defendant did not own the alleged debt on April 10, 2012." Pl.'s Ex. D at 5. OPS's response said simply, "Admitted." *Id.* In October 2013, defendants moved to withdraw this admission. They argued that OPS, in responding to the request, "misunderstood this discovery request's meaning," because they thought "it meant whether OPS purchased or otherwise came to own the debt on April 10, 2012, which it did not because OPS purchased the account two years earlier." Defs.' Mot. to Withdraw Admissions at 3 [docket no. 98]. The Court denied defendants' motion.

Defendants first argue Kasalo is not permitted to move for summary judgment on a section 1692e(2)(A) claim because his complaint "contains no reference" to this section. Defs.' Mem. at 11. However, Kasalo's third amended complaint plainly asserts a claim under section 1692e(2), alleging that defendants violated the statute "by misrepresenting the character, amount, and legal status of the alleged debt." 3d Am. Compl. ¶ 86(b). This sentence incorporates the near-exact wording of section

1692e(2)(A) (encompassing false representation of "the character, amount, or legal status of any debt"). This constitutes a "reference" to the proper statute section, contrary to defendants' argument. Defendants do not point to any case prohibiting a party from moving for summary judgment on a claim because the party cited the correct statute section and subsection and referenced its terms but did not identify in its complaint the particular paragraph of that subsection.

Defendants devote more space to their second argument, that OPS actually did own the debt in question on the date it sent its letter to Kasalo and thus did not make a false representation about his debt. They contend that OPS's admission that it did not own the debt was "erroneous," because OPS bought Kasalo's account in March 2010. Defs.' Repl. at 3. However, the Court denied defendants' motion to withdraw this admission. The admission, like any other, is governed by Federal Rule of Civil Procedure 36: "A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b). The Seventh Circuit has elaborated on the effect of such an admission: "Admissions, in some ways, are like sworn testimony. Once one is made, there is no need to revisit the point." *Banos v. City of Chicago*, 398 F.3d 889, 892 (7th Cir. 2005). An admission thus can "serve as the factual predicate for summary judgment." *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987).

Defendants have admitted that OPS did not own the account at the time they sent the letter to Kasalo, which "conclusively establishe[s]" the matter. Only at a later point in the litigation did they present evidence that OPS did own the account. Thus the only dispute of fact involves the contradiction between defendants' admission (on which

Kasalo relies) and their argument that they purchased the account before writing Kasalo the letter. Defendants have not asked the Court to reconsider its decision not to permit them to withdraw the admission, and the Court sees no basis to revisit the point at this juncture of the case. Because the admission establishes that Trident's letter contained a misrepresentation—that OPS owned the debt when it has admitted it did not—the Court grants Kasalo summary judgment on this claim.

### 2. Section 1692e and 1692e(8) claims

Kasalo has moved for summary judgment on his claim under 15 U.S.C. § 1692e(8), in which he contends that Trident reported to credit reporting agencies an incorrect date of delinquency on his account. In response, defendants have also moved for summary judgment on the claim, and on Kasalo's claim under 1692e as well, which they contend concerns the same conduct. Defendants argue that the claims are time-barred, because Kasalo was aware in September 2010 that Trident was reporting information about his account to credit agencies, yet he did not sue until April 2012, outside the FDCPA's one-year statute of limitations. They cite Kasalo's September 2010 credit report, which contains an entry labeled "Trident Asset Management." *See* Pl.'s Ex. T-11 at 13. The entry states that Kasalo's $118 Columbia House DVD debt was "placed for collection" in March 2010. Defendants also argue that Trident did not report the incorrect date of delinquency to credit reporting agencies, and that even if it did, the error was immaterial.

Under 15 U.S.C. § 1692e(8), a debt collector may not "[c]ommunicat[e] or threaten[ ] to communicate to any person credit information which is known or which should be known to be false." Likewise, under section 1692e, a debt collector "may not

use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Defendants do not dispute that Kasalo's account first went delinquent "on or before February 15, 2008." Defs.' Resp. to Pl.'s LR 56.1 Stat. ¶ 50. Their other statements on this topic are, however, contradictory.

First, regarding defendants' contention that Kasalo's claims are untimely, the parties disagree on the date Trident began communicating with credit reporting agencies about Kasalo's debt. In a response to an interrogatory asking for a description of the process for transmitting correspondence sent to Kasalo or any third party (including Experian), Trident stated that it "transmits data to the credit reporting agencies electronically on monthly basis [sic]. Trident first reported Plaintiff's account on March 22, 2012." Pl.'s Ex. K at ¶ 36. In contrast, in response to Kasalo's statement of facts, defendants state that Trident "communicated information to Trans Union about plaintiff's account on March 22, 2012" but "[d]eny communications to other credit reporting agencies on March 22, 2012." Defs.' Resp. to Pl.'s LR 56.1 Stat. ¶ 42. As stated above, defendants' argument on the untimeliness of Kasalo's claims on this question is that Kasalo knew Trident was reporting information about his account to credit reporting agencies in 2010. Yet defendants have not consistently stated whether they began reporting that information before 2012. They have thus succeeded in creating an issue of material fact about whether Kasalo's claim is timely, through their own contradictory statements about the start of their reporting of his account.

Second, regarding whether defendants reported a different date of delinquency (or any date of delinquency) to the credit reporting agencies, there is also a genuine dispute of fact. In their initial memorandum, defendants state that Trident "does not

report the first date of delinquency to the bureaus; rather it reports the first date of collection as the date that triggers the reporting period." Defs.' Mem. at 13. In their response to Kasalo's statement of facts, however, defendants admit that "Trident communicated, to the Equifax Credit Reporting Agency, that the alleged debt first went delinquent on February 6, 2009." Defs.' Resp. to Pl.'s LR 56.1 Stat. ¶ 48. They repeat this admission with respect to the Innovis and TransUnion credit reporting agencies. *See id.* ¶¶ 46–47. These admissions echo earlier statements defendants made in response to interrogatories by Kasalo. *See* Pl.'s Ex. JJ at ¶ 2 ("State the date of first delinquency that Trident communicated to the TransUnion credit reporting bureau that corresponds to the alleged debt . . . . ANSWER: February 6, 2009 as provided for in previously answered discovery . . . ."). In their summary judgment memoranda, defendants do not attempt to explain or correct this contradiction in their own statements regarding what they reported in this regard.

As with pleadings, depositions, affidavits, and admissions, summary judgment is proper only if "answers to interrogatories . . . show that there is no genuine issue as to any material fact." *Gibbs v. Lomas*, No. 13-3121, 2014 WL 2736066, at *4 (7th Cir. June 17, 2014). On this claim, defendants' various statements, including those in response to interrogatories, provide differing answers to the relevant factual questions of when Trident first started reporting Kasalo's debt and whether Trident reported February 6, 2009 as the date of Kasalo's first delinquency to credit reporting agencies. Considering these issues of fact, summary judgment is inappropriate in favor of either

party on Kasalo's section 1692e or 1692e(8) claims.[6]

### 3.    Section 1692e and e(10) claims

Kasalo asserts another claim under 15 U.S.C. § 1692e, alleging that defendants "falsely and unfairly t[old] Plaintiff he was required to communicate the reason for his dispute of the alleged debt via letter."  3d Am. Compl. ¶ 86(d).  He uses this same language to assert an additional claim under 15 U.S.C. § 1692e(10).  Defendants contend that no evidence supports the claim, given Kasalo's statement that he lost his notes about the call and the contention that Trident properly told him that it would obtain verification of his debt if he notified Trident that he disputed the debt within thirty days. They also argue that even if Trident told Kasalo he had to dispute his debt via letter, it was an immaterial misstatement.

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." Under subsection 10 of that provision, "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" is a violation of the FDCPA.  15 U.S.C. § 1692e(10).

Kasalo's response to defendants' arguments on these claims does not cohere with the language of his claims under these sections.  In his reply brief, Kasalo argues that he "has credibly testified that he was not given the information that Defendants assert was given" and that the claims "turn[ ] on whether [Trident employee Mautz] told Plaintiff any of the information required by 1692g."  Pl.'s Reply at 24.  That, however, is the opposite of what Kasalo's section 1692e and e(10) claims state.  These claims posit

---

[6] Given this conclusion, the Court need not address at this time whether the false information that Trident allegedly conveyed to credit reporting agencies was material.

that Kasalo was told something *in addition* to the required information under section 1692g that is *not* part of the requirements—specifically, that he had to "communicate the reason for his dispute of the alleged debt via letter."  3d Am. Compl. ¶¶ 86(d)–(e). Kasalo's complaint is correct in stating that section 1692g does not set forth such a requirement, but defendants argue there is no evidence that is what Kasalo was told. Kasalo does not respond to this argument, aside from mentioning the numbers of the federal statutes under which he is suing defendants and (perhaps erroneously) discussing the content of his other claims instead.  Kasalo has therefore conceded the point.  *See In re LaMont*, 740 F.3d 397, 410 (7th Cir. 2014) (failure to respond to argument results in waiver).  There is thus no dispute of material fact, and no reasonable fact finder could find in Kasalo's favor on his claims that Trident falsely told him he had to communicate via letter the reason for his dispute.  The Court therefore grants summary judgment to defendants on those claims.

**E.      15 U.S.C. § 1692f claims**

Kasalo's complaint includes four claims under 15 U.S.C. § 1692f.  One concerns his allegation that defendants falsely and unfairly told him he was required to communicate his dispute of his debt via letter; two allege that defendants "unfairly caus[ed] an obsolete debt to be reported" on Kasalo's credit reports; and the last alleges that defendants tried to collect a debt from him without being authorized by law to do so.  3d Am. Compl. ¶¶ 86(f)–(i).  Defendants have moved for summary judgment on all four of these claims.

Defendants first argue that all four of these claims are time-barred under the FDCPA's one-year statute of limitations.  As discussed earlier, there is a dispute of fact

about when Trident began reporting Kasalo's account to credit bureaus and thus whether Kasalo had notice of potential FDCPA violations more than a year before he brought his claims. Defendants' argument is therefore insufficient for purposes of summary judgment here as well.

Defendants argue that they are entitled to summary judgment on Kasalo's claim under section 1692f(1) that Trident's attempted collection of the debt was not authorized by law. Under that section, a debt collector may not attempt collection of a debt "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). This claim, Kasalo says, is based on the contention that OPS did not own the account when Trident sent its letter to Kasalo indicating the opposite. *See* Pl.'s Reply at 19. He argues that because OPS did not own the debt when it Trident sent him its letter in April 2010, OPS could not legally attempt to collect a debt it did not owe, violating section 1692f(1). Defendants do not respond to this argument. They instead contend in their reply, as they do in their initial memorandum, that Kasalo's claim concerns his assertion that he did not owe the debt in question, of which they argue he has no proof. *See* Defs.' Reply at 8. Elsewhere, in a footnote, defendants acknowledge that Kasalo's section 1692f(1) claim is based on OPS's admission that it did not own the account, but they stop there, appearing to refer the Court to their arguments about the admission on Kasalo's section 1692g(a) claim. *See id.* at 3 n.1. As before, OPS's admission that it did not own the debt in question when it sought to collect from Kasalo conclusively establishes that fact. There is thus no dispute of material fact on whether OPS could legally collect the debt, because it has admitted it did not own the account at the time it sent the letter, and thus there is no

agreement or law that authorized it. The Court therefore grants summary judgment to Kasalo on this claim.

As for Kasalo's two claims under section 1692f regarding Trident's reporting of an obsolete debt, the parties' arguments are unclear. Defendants contend that "the account was charged to profit and loss" in February 2009. Defs.' Mem. at 8. In saying this, they seem to be arguing that the account was not "obsolete," because given the February 2009 date it could not have been delinquent for over ten years, as Kasalo alleges. In response, Kasalo says defendants have previously admitted that the date of first delinquency on the account was on or before February 15, 2008, and he argues that they have therefore "reported materially false information."[7] As with Kasalo's claim under section 1691e(8) discussed above, there is a dispute of fact between the parties about whether Trident reported a date of delinquency to credit reporting agencies, and if so whether that date was February 2008 or February 2009. Assuming from the parties' arguments that the reporting of this date (or lack thereof) is critical to Kasalo's section 1691f claims regarding the obsolete debt, summary judgment is inappropriate for either party on the claims, given the existence of a dispute of material fact.

Defendants also move for summary judgment on Kasalo's remaining section 1692f claim: that defendants unfairly told him he had to state the reason for his dispute of his debt in a letter. They contend that there is no evidence in the record to support

_____

[7] Missing from all of this is any discussion from either side about how the reporting of an "obsolete" debt violates section 1692f, which concerns unfair means of debt collection, not debt reporting. Neither party is helpful in explaining to the Court why causing an obsolete debt to be placed on a debtor's credit report would amount to an "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1691f. Yet defendants do not raise this issue, and thus the Court will proceed on the assumption that Kasalo is properly asserting section 1691f claims.

this claim.  As with his similar claims under sections 1692e and 1692e(10), Kasalo does

not respond to this argument, and he has therefore conceded it.  The Court thus

determines there is no dispute of fact regarding this section 1692f claim, and grants

defendants' motion for summary judgment on the claim.

Finally, in his reply, Kasalo asserts that Trident's failure to give him an address to

which he could send a written dispute violates section 1692f as well as section 1692g.

Kasalo has already based part of his section 1692g claim on Trident's failure to provide

him with an address—yet section 1692g contains no requirement that a debt collector

provide an address among the initial information it gives to the consumer.  Further,

Kasalo acknowledges that he had "not alleged specifically that failure to communicate

an address is a §1692f violation" in his complaint.  Pl.'s Reply at 11.  Yet he contends

that defendants were "on notice" of his allegation about their failure to give him their

address via his section 1692g claim.  This does not change the fact that he included no

section 1692f claim on these facts in his complaint.  In the Seventh Circuit, a plaintiff

cannot "amend his complaint through arguments in his brief in opposition to a motion for

summary judgment."  *Anderson v. Donahoe*, 699 F3d 989, 997 (7th Cir. 2012) (internal

quotation marks omitted).  Kasalo has therefore not properly asserted a section 1692f

claim based on this contention.

## F.    Bona fide error defense

In addition to their motion for summary judgment on Kasalo's individual claims,

defendants argue that Trident is entitled to summary judgment on all of his claims

because any action for which it might be liable under the FDCPA was due to bona fide

error.  This defense applies both to Kasalo's claims regarding Trident's communications

with him as well as his claims concerning its credit reporting.  On its communications

with Kasalo, defendants argue Trident did not mail Kasalo a letter within five days

because the person responsible was on vacation, and that Trident in general trained its

employees and has a copy of the FDCPA in its office.  As for credit reporting,

defendants say that Trident "does not calculate the obsolescence date as it is calculated

by" credit reporting agencies and that it has credit reporting software to assist in

accurate reporting.  Defs.' Mem. at 24.

The FDCPA does not permit a debt collector to be held liable for a violation of the

act "if the debt collector shows by a preponderance of evidence that the violation was

not intentional and resulted from a bona fide error notwithstanding the maintenance of

procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  To

invoke this defense, the Seventh Circuit has required defendants to "show that the

violation:  (1) was unintentional, (2) resulted from a bona fide error, and (3) occurred

despite the debt collector's maintenance of procedures reasonably adapted to avoid

such error."  *Ruth*, 577 F.3d at 803.

Defendants' first argument, that Trident's failure to send Kasalo a letter within five

days was qualifies as a bona fide error, stretches credulity.  The argument is based on

the premise that there was an "error" because the person who is apparently solely

responsible for mailing section 1692g disclosure letters to consumers was on vacation.

This does not describe a bona fide error, but rather a failure to establish a contingency

plan for sending disclosures to consumers that are required by federal law.  Perhaps the

failure to send Kasalo the letter was unintentional, but defendants cannot seriously

argue that they had procedures in place to prevent this particular error.

As for defendants' assertion of the defense against Kasalo's credit reporting claims, defendants do not appear to be admitting that Trident committed an error of any kind, let alone a bona fide error. They continue to maintain that Trident did not actually provide an obsolescence date on Kasalo's account to the credit reporting agencies, a contention that as noted earlier is subject to a genuine dispute of fact and, regardless, does not describe an unintentional error or even acknowledge what the error might have been. On the question of how its procedures are adapted to avoid such errors, defendants say that Trident's credit reporting software complies with something called "Metro 2 format" and also "satisfies the compliance standards for the data TAM sends to the CRAs." Defs.' Mem. at 24. They continue: "Once the data from the flat file passes through the software, the software creates a Metro 2-compliant file for submission to the CRAs." *Id.* Defendants provide no clue as to what any of this might mean. Further, even if their technical description of their software conceivably provided grounds to agree that they maintained procedures designed to avoid errors, they have not said at any point what their unintentional error might have been, and thus they have not satisfied all elements of the bona fide error defense. The Court therefore declines to grant Trident summary judgment on Kasalo's claims based on any bona fide error that Trident may have made.

**G.      Actual damages**

In addition to statutory damages, Kasalo requests actual damages that he suffered as a result of defendants' actions in his complaint. Defendants contend that the record includes no evidence that Trident or OPS caused Kasalo any actual damages, including emotional distress. Kasalo does not respond to this argument in his

reply / response memorandum.  He has therefore conceded the point.  *See LaMont*,

740 F.3d at 410.  The Court therefore strikes Kasalo's claim for actual damages.

## Conclusion

For the reasons stated above, the Court grants OPS summary judgment on all of

Kasalo's claims.  It also grants Trident summary judgment on the following claims and

contentions:

- 15 U.S.C. § 1692e:  falsely and unfairly telling Kasalo he was required to communicate the reason for his dispute of the alleged debt via letter;

- 15 U.S.C. § 1692e(10):  falsely and unfairly telling Kasalo he was required to communicate the reason for his dispute of the alleged debt via letter;

- 15 U.S.C. § 1692f:  falsely and unfairly telling Kasalo he was required to communicate the reason for his dispute of the alleged debt via letter; and

- Kasalo is not entitled to actual damages.

The Court also grants Kasalo summary judgment on the following claims:

- 15 U.S.C. § 1692g(b):  failure to cease collection of debt after having received a written dispute of the debt from Kasalo within the 30-day period prescribed by 15 U.S.C. § 1692g(a); and

- 15 U.S.C. § 1692e(2)(A):  misrepresenting the character, amount, and legal status of the alleged debt.

- 15 U.S.C. § 1692f(1):  attempting to collect an amount of debt from Plaintiff without said amount being authorized by agreement or allowed by law.

The Court otherwise denies both sides' motions [dkt. nos. 113 & 132].  The case is set

for a status hearing on July 14, 2014, at 9:30 a.m. for the purpose of setting a trial date

and discussing the anticipated length of the trial.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  July 7, 2014